# SUPREME COURT OF THE UNITED STATES

————

No. 13A57

————

## EDMUND G. BROWN, GOVERNOR OF CALIFORNIA, ET AL. *v.* MARCIANO PLATA AND RALPH COLEMAN, ET AL.

ON APPLICATION FOR STAY

[August 2, 2013]

The application for stay presented to JUSTICE KENNEDY and by him referred to the Court is denied. JUSTICE ALITO would grant the application for stay.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

When this case was here two Terms ago, I dissented from the Court's affirmance of the injunction, because the District Court's order that California release 46,000 prisoners violated the clear limitations of the Prison Litigation Reform Act, 18 U. S. C. §3626(a)(1)(A)—"besides defying all sound conception of the proper role of judges." *Brown* v. *Plata*, 563 U. S. ___, ___ (2011) (slip op., at 16). The Court's opinion approving the order concluded with what I described as a "bizarre coda," *id.*, at ___ (slip op., at 12), which said that "[t]he State may wish to move for modification" of the injunction, and that the District Court "may grant such a request provided that the State satisfies necessary and appropriate preconditions," *ibid.* (internal quotation marks omitted). More specifically, the opinion suggested that modification might be in order if the State makes "significant progress . . . toward remedying the underlying constitutional violations" and "demonstrate[s] that further population reductions are not necessary." *Id.*, at ___ (slip op., at 47). These "deliberately ambiguous . . . suggestions on how to modify the injunction," were, I

observed, "just deferential enough so that [the Court] can
say with a straight face that it is 'affirming,' just stern
enough to put the District Court on notice that it will
likely get reversed if it does not follow them." *Id.*, at ___
(slip op., at 13) (dissenting opinion). That was in my view
"a compromise solution" that is "unknown in our legal
system," which does not permit appellate courts to pre-
scribe in advance the exercise of district-court discretion.
*Id.*, at ___, ___ (slip op., at 13, 14). I warned, moreover,
that "the judges of the District Court are likely to call [the
Court's] bluff, since they know full well it cannot possibly
be an abuse of discretion to refuse to accept the State's
proposed modifications in an injunction that has just been
approved (*affirmed*) in its present form." *Id.*, at ___ (slip
op., at 14).

The bluff has been called, and the Court has nary a pair
to lay on the table. The State, seeking to invoke the *ex
ante* appellate control of district-court discretion, and to
compel the modification decreed by the Court's raised
eyebrow, provided evidence that it has made meaningful
progress and that population reductions to the level re-
quired by the injunction are unnecessary. But the latter
argument was made and rejected in the last round, and
the former hardly requires (*demands*) modification of the
injunction. It was predictable two Terms ago that the
State *would* make progress—indeed, it promised to do so.
If the reality of incremental progress makes the injunction
now invalid, the probability (indeed, one might say the
certainty) of incremental progress made the injunction an
overreach two Terms ago. Surely it is not the case that
when a party subject to an injunction makes substantial
progress toward compliance it is an abuse of discretion not
to revise the injunction.

But as I suggested in my dissent, perhaps the Court
never meant to follow through on its revision suggestions.
Perhaps they were nothing more than "a ceremonial wash-

ing of the hands—making it clear for all to see, that if the terrible things sure to happen as a consequence of this outrageous order do happen, they will be none of this Court's responsibility. After all, did we not want, and indeed even suggest, something better?" *Ibid.* So also today, it is not our fault that California must now release upon the public nearly 10,000 inmates convicted of serious crimes—about 1,000 for every city larger than Santa Ana—three-quarters of whom are moderate (57%) or high (74%) recidivism risks. Reply in Support of Application 34.

It appears to have become a standard ploy, when this Court vastly expands the Power of the Black Robe, to hint at limitations that make it seem not so bad. See, *e.g.*, *Lawrence* v. *Texas*, 539 U. S. 558, 604 (2003) (SCALIA, J., dissenting); *United States* v. *Windsor*, 570 U. S. ___, ___ (2013) (slip op., at 25–26) (SCALIA, J., dissenting). Comes the moment of truth, the hinted-at limitation proves a sham. As for me, I adhere to my original view of this terrible injunction. It goes beyond what the Prison Litigation Reform Act allows, and beyond the power of the courts. I would grant the stay and dissolve the injunction.